# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS PETOFF, | ) | |
|     Plaintiff, | ) | Civil Action No. 1:16-79ERIE |
| | ) | |
|     v. | ) | |
| | ) | |
| EDWARD YEANEY, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## **MEMORANDUM OPINION**[1]

United States Magistrate Judge Susan Paradise Baxter

**Relevant Procedural History**

    This civil action was filed in this Court on April 11, 2016. Plaintiff, a pretrial detainee at the Erie County Prison, brought this civil rights action. In his original complaint, Plaintiff named a single defendant: Lt. Edward Yeaney, a guard at Erie County Prison. ECF No. 3. In an amended complaint, Plaintiff expanded on his claims and named the following Erie County Prison employees as Defendants: Lt. Edward Yeaney, Correctional Officer Anthony Allman, Deputy Warden Gary Seymour, Deputy Warden Michael Holman, and Warden Kevin Sutter. ECF No. 21. Plaintiff alleges that Yeaney used excessive force against him and that Allman and Sutter failed to intervene to protect him from Yeaney. Plaintiff claims that after he filed this lawsuit against Yeaney only, Seymour and Holman retaliated against him by denying him reclassification into general population.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter.

1

Defendants filed a motion to dismiss [ECF No. 62] and Plaintiff filed a brief in opposition [ECF No. 68]. This motion is fully briefed and is ripe for disposition by this Court.

**Standards of Review**

    **1)** *Pro Se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

    **2) Motion to dismiss**

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true.

2

Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Emps' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McTernan v. City of York, Pa., 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004). Although the United States Supreme Court ("Supreme Court") does "not require heightened pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, No. 07-528, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

3

evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases. To determine the sufficiency of a complaint under Twombly and Iqbal, the court must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 3) **Motion for summary judgment**

Because the parties have filed evidence in support of their filings, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**The Allegations of the Amended Complaint**

In January of 2016, Plaintiff was a pretrial detainee in the Erie County Prison. ECF No. 21, ¶ ¶ 3, 11. Plaintiff is confined to a wheelchair and suffers from bedsores. In the early morning hours of January 2nd, Plaintiff asked Allman to notify medical that a wound vac machine was beeping indicating a loss of suction. Id. at ¶ 12. Nurse Barbalaci came to Plaintiff's cell to adjust Plaintiff's bandages and the vac machine. After Barbalaci left Plaintiff's cell, the wound vac machine began to beep again and Plaintiff asked Allman to call the medical department. Id. at ¶ ¶ 16-17.

Approximately an hour later, Allman directed Plaintiff to get dressed so that he could be transported to the medical department. Plaintiff refused. Id. at ¶ ¶ 19-22. Allman allegedly told Plaintiff "Get up in your wheelchair or me and Lt. Yeaney will drag you to medical." Plaintiff responded: "I'm allowed to refuse medical for something that's 'as needed' so if you're gonna drag me, drag me." Id. A couple minutes later, Lt. Yeaney and Officer Allman entered Plaintiff's cell. Plaintiff claims Yeaney swore at him, grabbed him by the throat, pushed him down on his bunk and choked him, while Allman watched. Id. at ¶ ¶ 23-26. Lt. Yeaney choked Plaintiff for one minute before picking him up and dropping him on the floor. Plaintiff claims that Yeaney and Allman then grabbed him by the arms and forcefully slammed him into his wheelchair. Id. at ¶ ¶ 27-28. Plaintiff was transported to the medical department where he refused medication attention before being returned to his cell. Id. at ¶ ¶ 29-30. Plaintiff claims he suffered pain and injuries as a result of this incident. Plaintiff contends that his due process rights were violated.

Plaintiff claims that Yeaney used excessive force against him and that Allman failed to intervene to protect him from the use of excessive force. Id. at ¶ ¶ 48-50. Plaintiff also claims that Warden Sutter failed to protect him. Id. at ¶ ¶ 49, 51-52.

Plaintiff claims that Seymour and Holman retaliated against him after he filed the instant civil rights actions against Yeaney, by repeatedly denying his requests for reclassification off of the maximum security unit. Id. at ¶¶ 53-54. Additionally, Plaintiff alleges the Holman intercepted his request slips. Id. at ¶ 54.

**Personal Involvement of Defendant Sutter**

As to Defendant Sutter, Plaintiff makes very few factual allegations.[2]

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United

---

[2] All of Plaintiff's factual allegations against Defendant Sutter are as follows:

> 8. Defendant Kevin Sutter is and was, at all relevant times hereto, the Warden of the Erie County Prison. As Warden of the Erie County Prison, Defendant manages its day-to-day operations and executes its policies.
>
> 10. … On January 10, 2016 Plaintiff appealed the grievance denial. On January 13, 2016[,] Plaintiff received a response from Defendant Warden Sutter, stating the appeal to his grievance has been denied. […] On June 30, 2016[,] Plaintiff appealed the grievance denial and on June 30, 2016[,] Plaintiff received a response from Defendant Warden Sutter, stating the appeal to his grievance has been denied.
>
> 49. … Sutter evinced [sic] deliberate indifference when [he] failed to protect Plaintiff from Defendant Yeaney's physical assault and accompanying derogatory remarks.
>
> 51. Defendant Sutter exercised deliberate indifference to Plaintiff's health and safety by failing to act against Defendant Yeaney knowing he has a record of missing force and regularly uses pepper spray ("O.C.") excessively as a means of punishment and not for legitimate reasons, as well as the fact that Defendant Sutter knew Defendant Yeaney had a propensity to use excessive force to enforce rules and policies.
>
> 52. As a result of the deliberate indifference exercised by … Defendants, Plaintiff suffered harm at the hands of Defendant Yeaney …

ECF No. 21.

7

States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Additionally, each defendant in a civil rights action "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellacriprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed.App'x 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello, 805 F.2d at 133; Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990) cert. denied, 501 U.S. 1218 (1991). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to

show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id., quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). In this second type of supervisory liability, a plaintiff must show four elements: 1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; 2) the defendant-supervisor was aware that the policy created an unreasonable risk; 3) the defendant-supervisor was indifferent to that risk; and 4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

Here, Plaintiff's allegations against Defendant Sutter, even viewed in the light most favorable to Plaintiff, fail to state a claim under either theory of supervisory liability in that there are no allegations that Sutter participated in the alleged excessive force or was a proponent of

9

any policy that created an unreasonable risk.[3] The motion to dismiss will be granted in this regard.

**The Excessive Force Claim**

Plaintiff alleges that Defendant Yeaney violated his constitutional rights by using excessive force against him.

The excessive use of force claims are generally analyzed under the Eighth Amendment in factors laid out by the Supreme Court in Whitley v. Albers, 475 U.S. 312 (1986)[4]. However, when the complainant is a pretrial detainee rather than a convicted felon, the claim is treated as a due process claim under the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-39 (1979) (holding that the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the excessive use of force that amounts to punishment). A pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, ___ U.S. ___, 135 S.Ct. 2466, 2473 (2015). The inquiry as to the objective reasonableness of the force used will turn on the "facts and circumstances of each particular case." Id. quoting Graham v. Connor, 490 U.S. 386, 396 (1989).

---

[3] The denial of Plaintiff's grievances does not, in itself, satisfy the requisite "personal involvement" requirement. Mincy v. Chmielsewski, 508 Fed.App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); Rogers v. United States, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

[4] Under Whitley, courts are tasked with evaluating the following factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321.

The following considerations may bear upon the reasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of Plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the Plaintiff was actively resisting. Id. This list is not exhaustive and is used "only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." Id.

With these legal tenets in mind, the Court will consider these factors to resolve the core judicial inquiry of whether the force used against Plaintiff was objectively unreasonable so as to violate Plaintiff's due process rights.

In support of their motion for summary judgment, Defendants have provided written evidence, as well as a video recording of Plaintiff's cell[5] during the January 2nd incident involving Plaintiff, Yeaney, and Allman. The video recording reflects that a nurse came to Plaintiff's cell at 1:15 am to check his bandage and wound vac machine. ECF No. 15 Exhibit B, DVD of Plaintiff's Cell. The nurse left and returned at 1:45 am to re-tape Plaintiff's bandage. Id. According to written reports, Plaintiff complained to the nurse that she did not know what she was doing (ECF No. 62-1, page 12) and Officer Allman warned Plaintiff not to speak to staff in such a disrespectful manner (id. at page 8). Shortly after the nurse left, Plaintiff contacted Allman to complain that the machine was beeping again and the re-taping of the bandage did not work. ECF No. 62-1, page 8. Allman contacted the medical department who directed Allman to bring Plaintiff to the medical department so that the bandage could be fixed. Id.

---

[5] The video camera is stationary and is located directly over the cell door and pointed at Plaintiff's bed. The camera does not show the door of Plaintiff's cell, but the view of Plaintiff's bed is unobstructed.

Again, according to the written reports of the incident, around 2:40 am, Allman opened Plaintiff's cell door and told him to get dressed for transport to the medical department. Id. Plaintiff refused to comply. Id. In Allman's report, he indicates that Plaintiff refused to go to medical. Id. Plaintiff complained to Allman that he would not go to medical because he wanted to wait until the next shift arrived so that someone competent could re-dress his wound. Id. According to Allman, he explained to Plaintiff that if he wanted to formally refuse medical care, he must go to the medical department in order to do so. Id. According to Officer Allman, Plaintiff replies: "You're going to have to drag me because I ain't going." Id. Allman then notified Lt. Yeaney of Plaintiff's refusal. Id.

Lt. Yeaney arrived at Plaintiff's cell and ordered him to get into his wheelchair to go to the medical department. Plaintiff refused to obey these orders. Id. See also ECF No. 62-1, page 10.

The video shows Yeaney and Allman entering Plaintiff's cell, at which time Plaintiff does not immediately respond or acknowledge them. ECF No. 15, Exhibit B. Then, Plaintiff sits up. Id. Yeaney placed his right hand on the back of Plaintiff's neck and his left hand on Plaintiff's chest. Plaintiff raised his right arm and Yeaney pushed Plaintiff onto his back on the bunk. Yeaney then placed Plaintiff in a sitting position and Yeaney and Allman attempted to move Plaintiff from his bunk into his wheelchair. Due to the awkwardness and non-cooperation of Plaintiff, the wheelchair shifted and Plaintiff slid off his bunk onto the floor. The officers then repositioned the wheelchair and picked Plaintiff up off the floor and placed him into the wheelchair while Plaintiff persisted in his non-cooperation.[6] Id. at 2:51 – 2:52:30.

---

[6] Plaintiff characterizes this as Defendants "slam[ing]" him into the wheelchair. ECF No. 69, ¶ 19.

12

The video shows that the length of time Yeaney's hands were on Plaintiff's neck and chest was no more than seven seconds and the amount of time it took Yeaney and Allman to pick Plaintiff up off the floor and put him in his wheelchair was no more than 8 seconds. The evidence shows that Plaintiff refused to cooperate with officers and resisted them in their efforts to transport him to medical.

Nursing records from the next day indicate that Plaintiff was "able to turn his neck, no noted skin breakdown, no bruising or swelling noted, skin warm, blanching, no figure (sic) marks noted." ECF No. 62-1, page 20. Plaintiff swears that he received "numerous bruises and abrasions to [his] neck and torso." ECF No. 69, ¶ 20.

This Court finds that after weighing the considerations as set out in Kingsley, as well as examining the other factual circumstances, Yeaney's actions were not unreasonable. Plaintiff had repeatedly requested medical attention, yet then refused to go to the medical department. Plaintiff was belligerent in that he told the nurse who was trying to help him that she was incompetent and later based his refusal to go to medical on her incompetence. Lt. Yeaney ordered Plaintiff to get himself in his wheelchair – an order that Plaintiff refused. Plaintiff indicated to Yeaney that he would have to drag Plaintiff to the medical department. Due to Plaintiff's resistance upon being lifted, the wheelchair shifted and Plaintiff was dropped onto the floor. Even if Plaintiff received bruises and abrasions, Plaintiff's injuries were slight. And, the entire episode lasted less than twenty seconds.

Summary judgment will be granted in favor of Defendant Yeaney on this claim.

**Failure to Intervene**

Plaintiff claims that Allman violated his constitutional rights by not intervening in the alleged excessive use of force by Defendant Yeaney.

A prison staff member has "a duty to take reasonable steps to protect a victim from another officer's use of excessive force[.]" Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (internal quotation omitted).[7] However, without an underlying finding of the excessive use of force, there can be no failure to protect claim. Nifas v. Coleman, 528 Fed. App'x 132 (3d Cir. 2013); Wardell v. City of Erie, 2015 WL 6134014 (W.D. Pa. Oct. 16, 2015) ("If there is no excessive force, then there is no corresponding duty to intervene.").

Accordingly, Plaintiff's failure to intervene claim against Defendant Allman will be dismissed.

**Retaliation**

Plaintiff's retaliation claim is two-fold. First, that Seymour and Holman repeatedly denied Plaintiff's requests for reclassification off the maximum security unit (ECF No. 21, ¶¶ 53-54) and second, that Holman intercepted his request slips and answered them "with undisguised disdain or ignore[d] them completely." Id. at ¶ 54.

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless by constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523,

---

[7] In a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. Smith, 293 F.3d at 650-51.

530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

    1) The conduct in which he was engaged was constitutionally protected;

    2) He suffered "adverse action" at the hands of prison officials; and

    3) His constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). It is Plaintiff's burden to establish all three elements of a *prima facie* retaliation claim.

    Plaintiff's filing of a lawsuit against Yeaney constitutes constitutionally protected conduct. Rauser, 241 at 333; Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).

    To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) quoting Allah v. Seiverling, 229 F.3d at 225. Plaintiff claims that because he was not reclassified and was kept in maximum security, he was prohibited from participating in religious programs, attendance in the law library and gym, his activity time was curtailed from 12 to 3 hours, and visits were limited from sixty to forty minutes. ECF No. 69, ¶ 46. These deprivations constitute adverse action. However, Plaintiff's averments that Holman intercepted, denied or ignored his request slips do not constitute adverse action as there is no right to a grievance process in prison and the denial of any grievances does not result in the loss of access to the courts. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) ("It is well-settled that there is no constitutional right to a grievance procedure."); Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1855 (2016) (holding that the PLRA has a "built-in exception to

15

the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'"). Plaintiff has failed to state a retaliation claim in this regard.

To satisfy the third prong of his retaliation claim, the plaintiff must show a causal connection between his constitutionally protected activity of filing complaints and grievances and the adverse action he allegedly suffered at the hands of the defendants. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267-67 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Id. quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements Id. Here, for purposes of this motion, a causal connection will be inferred based on the timing.

After satisfaction of the three elements of a *prima facie* retaliation claim, the burden shifts to the Defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. At this stage, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Here, Defendants cite multiple legitimate penological reasons for Plaintiff's continued classification in the maximum security unit; Plaintiff's medical condition and physical handicap; Plaintiff's use of a wheelchair that necessitates a single-bunk cell with space to accommodate the

wheelchair; Plaintiff's open bedsores that require dressing changes and medical devices such as the wound vac machine; and the nature and severity of the pending criminal charges against Plaintiff.[8] Plaintiff's disagreement with Defendants' reasoning is of no moment in the analysis of a retaliation claim.

Summary judgment will be granted on Plaintiff's retaliation claim arising out of the denial of reclassification.

An appropriate order will follow.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 28, 2018

---

[8] Plaintiff was charged with: promoting prostitution of minors; conspiracy; and corruption of minors. ECF No. 62-1, page 25.